UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LINRON PROPERTIES, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-00293-B |
| | § | |
| WAUSAU UNDERWRITERS | § | |
| INSURANCE COMPANY | § | |
| and SARA SPRINGMAN, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion to Remand (doc. 6), filed February 5, 2015. For the

reasons that follow, the Court concludes that Plaintiff's motion should be and hereby is **GRANTED**.

I.

BACKGROUND

Plaintiff Linron Properties ("Linron") sued Defendants Wausau Underwriters Insurance

Company ("Wausau") and insurance adjuster Sara Springman ("Springman") for the improper

handling of an insurance claim under a Commercial Property Policy ("Policy"), which Linron

purchased from Wausau. Doc. 1-3, Pet. at 2–3. After a storm caused damage to the insured property,

Linron sought coverage for the cost of repairs under the terms of the Policy and Wausau hired

Springman to serve as the adjuster for Plaintiff's claim. *Id.* at 3. Linron asserts that Springman

"conducted an outcome-oriented investigation and also hired experts she knew would under-scope

Plaintiff's damages in order to allow Wausau to avoid payment on the claim." *Id.* As a result of

Wausau's and Springman's actions, Linron claims that it has been wrongfully denied full coverage

for the damages sustained to the property. *Id.*

      Linron filed an Original Petition against both Defendants on December 22, 2014, in the 192nd Judicial District Court of Dallas County, Texas, asserting claims against Wausau for breach of contract, violations of chapters 541 and 542 of the Texas Insurance Code, and breach of the duty of good faith and fair dealing, and against Springman for violations of the Insurance Code.[1] *Id.* at 3–9. Defendants removed the case to this Court on January 29, 2015. Doc. 1, Notice of Removal. In their Notice of Removal, Defendants argue that the Court may exercise subject matter jurisdiction over this case under 28 U.S.C. § 1332, because although Linron and Springman are both citizens of Texas, Springman was improperly joined and thus her citizenship should not be considered for purposes of assessing the validity of diversity jurisdiction. *Id.* at 2–6. On February 5, 2015, Linron moved to remand the case to state court on the grounds that Springman was properly joined and therefore diversity of citizenship does not exist. Doc. 6, Mot. to Remand. Defendants filed a response to the motion on February 23, 2015, to which Linron replied on March 3, 2015. Doc. 8, Defs.' Resp.; Doc. 12, Pl.'s Reply. Accordingly, the motion is now ripe for review.

## II.

## LEGAL STANDARD

      Motions for remand are governed by 28 U.S.C. § 1447(c), which provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). When considering a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper."

---

[1] Linron also asserts a civil conspiracy claim against both Wausau and Springman. Pet. at 9.

*Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Furthermore, "any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

The federal removal statute, 28 U.S.C. § 1441(a), permits a defendant to remove any civil action to federal court that falls within the original jurisdiction of the district courts. One such grant of authority is found in 28 U.S.C. § 1332. That statute provides the district courts with original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). However, removal is only proper in such cases if there is complete diversity of citizenship among the parties at the time the complaint is filed and at the time of removal. *Mas v. Perry*, 489 F.2d 1396, 1398–99 (5th Cir. 1974). Moreover, none of the parties properly joined and served as defendants may be citizens of the state in which the action is brought. *See* 28 U.S.C. § 1441(b); *Gasch*, 491 F.3d at 281.

That being said, a non-diverse defendant may be disregarded for the purpose of analyzing complete diversity if the non-diverse defendant was improperly joined. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011) (citing *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)). The burden to establish improper joinder is on the removing party, and it is a heavy one. *Cuevas*, 648 F.3d at 249. The removing party must establish either "(1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir.2004) (en banc). In this case, Defendants do not assert that Linron engaged in fraud. Thus, in order to establish improper joinder, Defendants must demonstrate that there is no possibility of recovery by Linron against Springman. *Smallwood*, 385 F.3d at 573.

## III.

## ANALYSIS

Courts determine whether there is a possibility of recovery in one of two ways. One way is to conduct a "Rule 12(b)(6)-type analysis," looking to the face of the complaint to assess whether it states a claim against the non-diverse defendant. *Id.* The other way is to "pierce the pleadings" and conduct a Rule 56-type analysis. *Id.* The latter approach, however, is only appropriate where the summary judgment evidence reveals that the plaintiff has withheld facts relevant to the propriety of joinder. *Id.* Since this is not the case here, the Court proceeds with a Rule 12(b)(6)-type analysis of Plaintiff's Petition.

In conducting this 12(b)(6)-type analysis of a petition originally filed in Texas state court, this Court and other courts in the Northern District of Texas apply state court pleading standards. *Oldham v. Nationwide Ins. Co. of Am.*, No. 3:14-CV-0575-B, 2014 WL 3855238, at *4 (N.D. Tex. Aug. 5, 2014) (Boyle, J.). Traditionally, Texas courts have applied a pleading standard that is more liberal than the federal pleading standard, upholding a petition so long as it provides "fair notice of the claim involved." Tex. R. Civ. P. 45(b). In March 2013, however, the Texas Supreme Court adopted Rule 91a of the Texas Rules of Civil Procedure, which provides in pertinent part:

> [A] party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. A cause of action has no basis in the law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

While not identical to the Rule 12(b)(6) standard, the Texas Courts of Appeals have interpreted Rule 91a as essentially calling for a Rule 12(b)(6)-type analysis and have relied on the 12(b)(6) case law in applying Rule 91a. *See Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th

Dist.] 2014), *reh'g overruled* (Oct. 9, 2014); *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014), *review denied* (Nov. 21, 2014). Accordingly, this Court shall do the same.

A.      *Rule 12(b)(6) Standard*

Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). Furthermore, the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

B.    *Application*

In its Petition, Linron asserts a claim against Springman for violating various provisions of chapter 541 of the Texas Insurance Code, including for "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim," as well as for civil conspiracy. Doc. 1-3, Pet. at 7–9. Defendants argue that Plaintiff's allegations merely consist of conclusory statements and statutory boilerplate language and are therefore insufficient to state a viable claim against Springman. Defs.' Resp. at 3–5. Moreover, Defendants state that the recent case of *One Way Investments v. Century Surety Co.*, No. 3:14–CV–2839–D, 2014 WL 6991277 (N.D. Tex. Dec. 11, 2014) defeats the possibility of remand for this matter. *Id.* at 5–7.

Under the Insurance Code, an individual who has been damaged by "unfair methods of competition or unfair or deceptive acts or practices in the business of insurance" may bring a cause of action against the "person or persons engaging in such acts or practices." Tex. Ins. Code § 541.151 (formerly codified as Tex. Ins. Code, art. 21.21); *see Transitional Hosp. Corp. v. Blue Cross & Blue Shield of Tex., Inc.*, 164 F.3d 952, 955 (5th Cir. 1999); *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997); *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 382–83 (Tex. 2000).The prohibited conduct includes "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear." Tex. Ins. Code § 541.160(a)(2). The Insurance Code defines a "person" as any "legal entity engaged in the business of insurance, including an . . . adjuster." Tex. Ins. Code § 541.002.

Both the Texas Supreme Court and the Fifth Circuit have recognized that an insurance adjuster may be held individually liable for violating chapter 541 of the Insurance Code. *Liberty*

*Mutual Ins. Co., v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 486 (Tex. 1998) (concluding based on chapter 541's definition of a "person" that an individual employee of an insurance company may be held liable for violations of the chapter, so long as the employee is "engage[d] in the business of insurance"); *Gasch*, 491 F.3d at 282 ("Texas law clearly authorizes [chapter 541] actions against insurance adjusters in their individual capacities.") (citing *Liberty Mutual*, 966 S.W.2d at 486). Following their lead, numerous lower courts, including this Court, have specifically found that an adjuster may be held personally liable for engaging in unfair settlement practices under provision 541.060 of the Texas Insurance Code. *See Esteban v. State Farm Lloyds*, 23 F. Supp. 3d 723, 729–31 (N.D. Tex. 2014); *Yeldell v. GeoVera Specialty Ins. Co.*, No. 3:12-CV-1908-M, 2012 WL 5451822, at *4 (N.D. Tex. Nov. 8, 2012); *Campbell v. Hartford Lloyd's Ins. Co.*, 3:05-CV-1180-B (N.D. Tex. Nov. 29, 2005) (Boyle, J., presiding)*; Blanchard v. State Farm Lloyds*, 206 F. Supp. 2d 840, 847 (S.D. Tex. 2001); *Shipley v. Nat'l Fire Ins. of Hartford*, No. 3:95-CV-0972-BC, 1998 WL 355493, at *3 (N.D. Tex. June 25, 1998) (Boyle, J., presiding).

Despite the abundance of case law supporting adjuster liability under § 541.060, however, a few courts have recently begun to question the appropriateness of holding an adjuster individually liable for unfair settlement practices under § 541.060. *See One Way Investments*, 2014 WL 6991277, at *4–5 (N.D. Tex. Dec. 11, 2014); *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721, 724 (N.D. Tex. 2014). These courts reason that an adjuster cannot be liable for violating those provisions of § 541.060 specifically referring to the settlement or paying of claims, because an adjuster "does not have settlement authority on behalf of [the insurance company]" and his or her "sole role is to assess the damage." *Messersmith*, 10 F. Supp. 3d at 724; *see also One Way Investments*, 2014 WL 6991277, at *4–5 (citing *Messersmith*, 10 F. Supp. 3d at 724). But while the courts' reasoning in

these cases has some logical appeal, a closer examination of the precise language of § 541.060(a)(2)(a) and the role played by insurance adjusters in the claims handling process belies their conclusions.

Section 541.060(a)(2)(A) prohibits those engaged in the business of insurance from "failing to attempt in good faith to *effectuate* a prompt, fair, and equitable settlement." Tex. Ins. Code Ann. § 541.060(a)(2)(A) (emphasis added). Webster's defines the word "effectuate" by reference to the definition for "effect," meaning "to cause to come into being" or "to bring about." Merriam-Webster's Collegiate Dictionary 397 (11th ed. 2007). The fact that the statute uses the word "effectuate" rather than a word that conveys finality (e.g., finalize), suggests that its prohibition extends to all persons who play a role in bringing about a prompt, fair, and equitable settlement of a claim.

As the persons primarily responsible for investigating and evaluating insurance claims, insurance adjusters unquestionably have the ability to affect or bring about the "prompt, fair, and equitable settlement" of claims, because it is upon their investigation that the insurance company's settlement of a claim is generally based. *See Arana v. Allstate Texas Lloyds*, No. 3:13-CV-0750-D, 2013 WL 2149589, at *5 (N.D. Tex. May 17, 2013) ("Adjusters play a role in the investigation, estimation, and settlement of insurance claims."); *Vargas v. State Farm Lloyds*, 216 F. Supp. 2d (S.D. Tex. 2002) (noting that the adjuster "engages in the business of insurance by investigation, processing, evaluating, approving, and denying claims"). As such, a delay in an adjuster's investigation will undoubtedly cause a delay in the payment of the claim, and an insufficient investigation may well lead to a less than fair settlement of a claim.

In this case, Linron asserts that Springman violated various provisions of § 541.060, including § 541.060(a)(2)(A), by retaining an engineer and contractor who were known for arriving at findings

that favored insurance companies, refusing to identify damage to the structure that was covered under the Policy, and failing to respond to Linron's inquiries regarding the status of the claim and payment. Pet. at 8–9. Linron further alleges that Springman's actions were "the producing cause(s) of injury and damage to Plaintiff" and ultimately contributed to Plaintiff suffering "actual damages, economic damages, and consequential damages." *Id.* at 9. Having reviewed these allegations, the Court finds them sufficient to support a claim against Springman in her individual capacity for violating § 541.060(a)(2)(A) of the Insurance Code. Therefore, Defendants have failed to establish that there is no reasonable basis to predict Plaintiff's recovery against Springman.

## IV.

## CONCLUSION

For the aforementioned reasons, the Court concludes that Plaintiff has stated a plausible claim against Springman for violating § 541.060(a)(2)(A) of the Insurance Code and, therefore, that Springman was properly joined as a party in this matter. Since both Plaintiff and Springman are citizens of Texas, the Court lacks valid diversity jurisdiction over this case. Accordingly, the Court hereby **GRANTS** Plaintiff's Motion to Remand (doc. 6) and **ORDERS** that this case be remanded to the 192nd Judicial District Court of Dallas County, Texas for further proceedings.

SO ORDERED.

SIGNED: June 16, 2015.

_____

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE